In re KAHN.

(District Court, S. D. New York.   September 24, 1902.)

**1.** BANKRUPTCY — COMPOSITION — PARTIES — SECURED CREDITORS—CONTINGENT CLAIMS.

Where a bankrupt had executed and assumed various mortgages on real estate, which had not been foreclosed, and on which his liability for a deficiency was contingent and unliquidated, such contingent claims not being provable in bankruptcy, the holders were not necessary or proper parties to a composition between the bankrupt and his creditors; and their absence was no objection to the confirmation of the composition, otherwise found to be for the best interest of creditors having provable claims against the estate.

## On Question Certified by Referee.

### The following is the opinion of Referee Morris S. Wise:

The questions certified to the Honorable District Judge are not submitted from a mere academic point of view, but the situation in this case is of a character which, in my opinion, deserves the immediate and serious consideration of the court, and the questions so certified are, in my judgment, properly to be disposed of by the learned District Judge, because of the fact that under the Act, the confirming of a composition is vested exclusively with the District Judge, and he has personal and absolute control of such proceedings.

The bankrupt, who was a dealer in diamonds and jewelry, and who also in the course of his business career, ventured to speculate in real property in the city of New York, was adjudicated a bankrupt upon his own petition on June 10, 1902.

The schedules filed by the bankrupt herein disclose that he owes debts amounting in the aggregate to nearly four hundred thousand dollars, of which upwards of one hundred and seventy-five thousand dollars are unsecured and provable against the estate.

The nominal value of the assets amount to two hundred and twenty-five thousand dollars, but the large proportion of these assets are in the shape of outstanding accounts to the extent of nearly one hundred and thirty thousand dollars, of which possibly fully one hundred and twenty thousand dollars thereof will prove to be uncollectible.

The balance of the assets have been to the greater extent, pledged as security, and are held by various secured creditors.

The composition offered by the bankrupt is twenty per cent. in cash, and this proposed composition has been accepted by a large majority, in number and amount of all the unsecured creditors of the bankrupt.

It is stated and as appears from the record in the proceedings herein, that if said composition is not consummated, and if the estate is administered in bankruptcy, that possibly not five per cent. will be realized by the creditors, and this opinion is shared to the greater extent, by the large majority of all the creditors in the case, who have appeared herein.

It is therefore very evident that it is for the best interests of the creditors that this composition should be effected, if it possibly can; and it seems to become the duty of the court, in protecting the best interests of all the creditors, to aid them, by assisting in the consummation of such composition, if the same can be done without violating any of the provisions of the Bankrupt Law.

The only obstacle which appears to exist at the present time to the carrying out of the said composition has arisen in the suggestion, that inasmuch as the bankrupt has become liable on certain mortgage bonds to a considerable amount of money, and as lis pendens have been filed and actions commenced for the foreclosure of the mortgages, to secure which the bankrupt gave his bonds, or the payment of which mortgages the bankrupt assumed, .

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 578.

and the said creditors holding such security, not having been made parties to the proceedings, and not having assented thereto, or appeared herein, the question has been noted whether the composition can be lawfully carried through and receive the approval of the court in the face of such existing circumstances.

If the securities held by these mortgage creditors were capable of being immediately liquidated, or if the value of such securities could be ascertained at the present time, no trouble would be experienced, because the act has provided (section 63, subd. "b," Act July 1, 1898, c. 541, 30 Stat. 562, 563 [U. S. Comp. St. p. 3447]) that unliquidated claims against the bankrupt may pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate; and there is a further provision (section 57, subd. "h"), that the value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee by agreement, arbitration, compromise or litigation, as the court may direct, and the amount of such value shall be credited upon such claim, and a dividend shall be paid only on the unpaid balance.

Subdivision "e" of the same section also provides that claims of secured creditors and those who have priority may be allowed to enable such creditors to participate in the proceedings at creditors' meetings, held prior to the determination of the value of their securities or priorities but shall be allowed for such sums only as to the court seem to be owing over and above the value of their securities or priorities.

Theoretically it would seem as if the Act afforded abundant means of solving the questions involved herein, but practically, all these several provisions of the Act fail to give prompt answer to such questions, for the very excellent reason that until there shall have been a sale under foreclosure of the mortgaged premises, the amount of the deficiency which may arise, can be only a mere matter of conjecture.

It is true that expert valuations may be obtained as to the value of the property, but as such valuations would be of no binding force, unless such secured creditors participated in the proceedings, the court is apparently without present power to act in such direction, or if it has the power, the exercise of it would consume so much time as to practically defeat the present immediate object which confronts the court, to wit, the putting through of the proposed composition.

It is very plain that if the said premises should upon sale bring the amount of the mortgage debt and expenses, that there will be no deficiency, and that there will be no creditors in that direction; and if these composition proceedings could be halted to await the result and determination of such foreclosures and sales, then the questions would receive their own answer; but the urgency of the situation requires that the questions involved as to the rights, if any, of the mortgage creditors, should receive immediate determination; and hence, resort must be had to other sections of the Act, as well as to decisions of the courts to determine whether such mortgage creditors really have a present interest in these composition proceedings, and whether they are proper and necessary parties thereto.

I am of the opinion that they are not either proper or necessary parties to this composition proceeding, and such composition may proceed duly and regularly without such creditors either assenting to it, or being calculated for the purpose of ascertaining whether a majority in number and amount of the creditors do assent to the confirmation of such composition, and for the following reasons:

Section 12, being the first section of the composition part of the Act, provides as follows:

"A. A bankrupt may offer terms of composition to his creditors after, but not before, he has been examined in open court, etc."

This provides that the composition shall be offered to his creditors. When we refer to the definition or what is known as the "Dictionary Section" of the Act, we find that section 1, subd. 9, defines a "creditor" as follows:

" 'Creditor' shall include any one who owns a demand or claim provable in bankruptcy, and may include his duly authorized agent, etc."

Debts which are provable are defined by section 63 of the Act to be

"A1. A fixed liability as evidenced by a judgment or an instrument in writing absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date, or with a rebate of interest upon such as are not then payable and do not bear interest.

"2. Due as costs taxable against an involuntary bankrupt etc.

"3. Founded upon a claim for taxable costs incurred in good faith etc.

"4. Founded upon an open account or upon a contract expressed or implied.

"5. Founded upon provable debts reduced to judgment after the filing of a petition and before the consideration of the bankrupt's application for a discharge etc."

It is very evident that such mortgage creditors have no present provable claims and are not therefore creditors within the true meaning of section 12 of the Act, because as already shown section 57, subd. "e," only provides for the allowance of claims of secured creditors upon the determination of the value of their security and the amount of which claim to be allowed only as the court finds is owing over and above the value of such security.

When we come to subdivision "b" of section 12 of the composition section of the Act, we find that there the law decides that "the application for the confirmation of a composition may be filed in court after but not before it has been accepted in writing by a majority in number of all creditors, whose claims have been allowed;" and then there is a further provision that "the consideration to be paid by the bankrupt to his creditors and the money necessary to pay all debts which have priority and the costs of the proceedings must be deposited."

Now debts having priority are considered in connection with secured claims in section 57, subd. "e," and the omission therefore of "secured claims," from section 12, subd. "b," when claims having priority are cared for, is at least significant; and the clear intendment of the law is that in case a claim shall not be provable or shall not be in such a condition so as to be capable of being proved and allowed, that it is not to be considered in connection with a composition.

The courts and text writers seem to agree that this is the proper construction. In Loveland on Bankruptcy, page 563, we find the principle stated that "the confirmation of a composition releases a bankrupt from such debts only as a discharge; a discharge in bankruptcy releases a bankrupt from all his provable debts, except such as are due as a tax levied by the United States etc.;" and on page 564, the same author holds that "composition proceedings will not operate to deprive a secured creditor of the right after exhausting his own security, to assert against the bankrupt a claim for a deficiency; such proceedings will not effect a vested right or security; secured creditors are not parties to the composition."

Brandenburg on Bankruptcy, at page 212, says:

"The confirmation of a composition discharges a bankrupt from his debts other than those agreed to be paid by its terms and those not effected by a discharge."

A similar question arose under the Act of 1867, in which a composition was effected by the bankrupt and where certain creditors holding security on real estate, were claimed to be fully secured at the time the composition was effected, and it afterwards transpired that a considerable balance or deficiency arose after the sale of the security; it was there held:

"I am of opinion myself that the compromise provisions of bankruptcy design that every creditor shall receive the same proportion of his debt; and I am of opinion as regards the parties who shall receive, that the secured creditor is a creditor for that purpose for all that is not satisfied by his security; and I am of opinion that whenever this fact is ascertained, even after the compromise, that remainder constitutes a debt against the bankrupt, of which he shall pay the same proportion to that creditor that he has paid to the unsecured creditors." Paret v. Ticknor, 16 N. B. R. 315, Fed. Cas. No. 10,711.

This case was approved in Cavanna v. Bassett, 3 Fed. 215, where it was held as follows:

"Composition proceedings do not operate to deprive a secured creditor of the right, after exhausting his own security, and ascertaining the amount unpaid, to assert against the bankrupt a claim for the deficiency, and such claim may be enforced through the instrumentality of an execution issued against the property of the debtor on the deficient judgment; complainant had a right to hold on to her security and as a secured creditor she could not properly participate in the composition proceedings; she could not be compelled to surrender her security, and then come in and prove her claim, nor was it encumbent on her to have her security valued and then to make proof of any balance; the bankrupts knew or should have known that there was a liability that the security would not pay the indebtedness; they were chargeable with notice that such a contingency might arise, and if they desired to put complainant in position where the complainant's proceedings would operate upon hers, they might have applied to the court for proceedings compulsory in their nature, to have the security valued; not having done so, there remained a liability that in case the security should prove inadequate, complainant would have the right as to any deficiency, to compel payment of the same to the extent of the percentage paid to unsecured creditors under the composition."

It thus would appear that the bankrupt must be willing in view of the situation to assume the risk and liability of being compelled to make good hereafter to such mortgage creditors, the same percentage of such deficiency, if any should arise. as he is now offering to pay to his body of creditors; and the mortgage creditors are not injuriously affected by the composition, because as is pointed out in the last case cited, they could by proper proceedings in the court, have their security valued and present a provable claim for the difference between the amount of their security and the amount of their respective debts.

The record shows that they have notice of the proceedings and have not availed themselves of such opportunity. I am therefore of the opinion, that the first and highest duty of the court, when such a case arises as the one under present consideration, is to protect the interests of the large majority of the creditors; they should not have a loss put upon them, because certain obstructive creditors refuse to assist in ridding the situation of any of its technical difficulties; such creditors should not be considered in any higher light or regarded with more favor than are a minority of creditors, who refuse to accept or assent to a proposed composition.

If the court reaches the conclusion that the composition offered is for the best interests of all creditors, the court will confirm the composition, even though there be objection and a refusal to assent on the part of a minority of creditors, and to my mind, the law would be very incomplete and impracticable, if a situation such as this could not be met and overcome by the broad equity powers conferred upon the District Court; more especially as the concluding paragraph of chapter 2 of the Act, expressly provides that "nothing in this section contained (and that is the jurisdiction section of the Act) shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated.

.Dated, New York, September 19, 1902.

G. W. & F. L. Crawford, for creditors.
Hays & Hershfield and D. P. Hays, for trustee and for creditors.
Myers, Goldsmith & Bronner, for bankrupt.

ADAMS, District Judge. The following questions are certified to me for my opinion:

"Are secured creditors, who hold mortgages on land, formerly owned by the bankrupt, and for the payment of which mortgages the bankrupt has executed his bond or has in the purchase of such real property, assumed the payment of existing mortgages, and where no present liability has arisen, which debts, if any, are purely contingent and subject solely to the contingency of a de-

ficiency arising in case the mortgaged premises shall be sold under fore-closure of such mortgages, and whose contingent debts, if any, are therefore not provable in bankruptcy, and the value of whose securities is not capable of present determination, necessary or proper parties to composition proceedings instituted by the bankrupt with his creditors? And should such a composition, if it be determined that the same is for the best interest of all creditors, having provable claims against the bankrupt estate, be refused the approval of the court, because such secured mortgage creditors are not made parties to the composition proceedings or refused voluntarily to become parties thereto."

I am satisfied that the referee has correctly answered the questions in his careful opinion and I adopt it in deciding that the secured creditors mentioned are not necessary or proper parties to this composition proceeding, and that it should not be refused approval because they are not parties; but as I have not heard them, or other parties than those who appeared before me and desired the confirmation of the referee's report, this decision is made without prejudice to the rights of such creditors as have not been given proper notice of the submission of the matter to me nor waived the same nor appeared herein.